**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

CASE NO.:

SURGERY CENTER OF VIERA, LLC,

     *Plaintiff*,

v.

CIGNA HEALTH AND LIFE
INSURANCE COMPANY,

     *Defendant*.

_____ /

**RE-FILED COMPLAINT**

     Plaintiff, Surgery Center of Viera, LLC ("SCV"), as medical provider, authorized representative, and assignee of patient / insured, D.B, sues Defendant, Cigna Health and Life Insurance Company ("Cigna"),[1] as follows:

**NATURE OF THE ACTION, PARTIES,**
**JURISDICTION, AND VENUE**

     1.    This action arises (Counts I-III), under state law for Defendant's

---

[1] The Harris Corporation Group Insurance Plan (the "Plan") document is attached hereto as **Exhibit A** and fully incorporated herein by reference, which such Plan document was tendered by Cigna to SCV under letters dated January 27, 2020, and February 5, 2020. Upon information and belief, the Plan is self-funded; but, per stipulation with defense counsel, neither the Plan nor Harris Corporation are required to be named defendants. As an aside, it would appear from Exhibit A that the name of the Plan is Harris Medical Plan, *see, e.g.,* Ex. A at IV-2 ("… this description of the Harris Medical Plan…"), but we have been advised before by Defendant that Harris Corporation Group Insurance Plan is the proper name of the Plan.

wrongful, unsubstantiated underpayment of monies owed to SCV for medical services SCV provided to the patient / insured, D.B., on January 23, 2018, which such causes of action have nothing to do with "right of payment" / coverage (*i.e.*, have everything to do with "rate of payment" / benefits unreasonably low payment amount) and which such causes of action have to do with third-party re-pricing contracts separate and distinct from the insurance policy / Plan document.[2]

2.     At all material times, SCV was a medical provider and a Florida limited liability company with its citizenship (*i.e.*, principal place of business / "nerve center") in Viera, Florida, Brevard County. SCV is *sui juris* in all respects. SCV's members are as follows: (a) Dr. Ara Deukmedjian, domiciled in Brevard County, Florida, (b) Sun Deukmedjian, domiciled in Brevard County, Florida, and (c) Dr. Bharat Patel, domiciled in Brevard County, Florida. At all material times, SCV was the authorized representative of D.B. with an assignment of benefits as well,[3] having provided subject medical services to

---

[2] If discovery reveals that Defendant's purported administrative record production (under Cigna letters dated January 27, 2020, and February 5, 2020) was / is not complete, SCV reserves the right to amend this Amended Complaint to add a cause of action under the Employment Retirement Income Security Act of 1974, Title 29, United States Code, Sections 1000-1461 ("ERISA"), for Defendant's administrative record production failures relating to the subject D.B.-related health insurance claim, implicating ERISA, 29 U.S.C. § 1024(b), 29 U.S.C. § 1132(c)(1), 29 C.F.R. § 2575.502c-1 to be precise, and 29 C.F.R. § 2560.503-1(h)(2)(iii) both as to records production and related penalty.

[3] All germane authorization and / or assignment paperwork in SCV's possession is attached hereto as **Exhibit B** (in redacted form) and incorporated fully herein by reference.

D.B. for which a proper amount of compensation (Counts I-III) was / is due and owing. And, again, Defendant honored such authorized representative and assignee capacities by, for examples, carrying out pre-suit appeals with SCV and tendering partial claim payments directly to SCV.

3.     At all material times, Cigna was an insurance company with its citizenship (*i.e.*, state of incorporation) and principal place of business / nerve center in the State of Connecticut and engaged in the business of selling and / or administering health insurance and / or deciding health insurance claims (*i.e.*, claim administering).

4.     This Court has jurisdiction over the entire dispute pursuant to Title 28, United States Code, Section 1332, as complete diversity exists between the parties and the amount in controversy exceeds $75,000.00 exclusive of interest, costs and attorney's fees.

5.     Venue is proper in the Middle District Court of Florida pursuant to Title 28, United States Code, Section 1391(b), since, for examples, (a) a substantial part of the events or omissions giving rise to the subject action occurred in this jurisdiction, namely the subject medical procedure and Defendant's underpayment of the subject insurance claim both at the initial claim and subsequent pre-suit appeal stages (Counts I-III), and (b) the Orlando Division of this Court has personal jurisdiction due to Defendant's minimum contacts in this forum.

6.     All conditions precedent to the institution of this action (*e.g.*, administrative pre-suit appeals) have occurred, been performed, been waived, or were futile.

## COMMON ALLEGATIONS

7.     The patient's Member I.D. number was / is 000211169 01, the assigned claim reference number was / is 9431803493452, the patient account number was / is 000200012804, and the authorization code (discussed again below) was / is B44NSKK1. Again, a copy of the insuring agreement (which is separate and distinct from the re-pricing contract / agreement at issue in this lawsuit, *see* **Exhibit C** incorporated fully herein by reference, and / or whatever mystery re-pricing contract / agreement / formula / program that Defendant implemented in arriving at the rate of payment furnished here) is attached as Exhibit A and incorporated fully herein by reference.

8.     At all material times, D.B. was covered (*i.e.*, coverage is not an issue here) by the Plan as evidenced by several things, with examples now discussed (and more discussed below).

a.  If D.B. was not an eligible / covered insured, the subject claim would not have been paid by Defendant in any amount, and this eligibility and claim payment correlation reality is stated in the pre-authorization paperwork discussed below and attached as **Exhibit D**. Exhibit D is incorporated fully herein by reference.

b. If the subject surgery (which such surgery was broken down by codes found in the HCFA found in SCV's initial claim submission packet) had not been covered,[4] the subject claim would not have been paid by Defendant in any amount. Regarding coverage of the subject HCFA codes, Defendant's EOBs furnished by Cigna (further discussed below) are attached as **Exhibit F** and evidence Defendant's coverage decision. Exhibit F (made up of EOBs dated March 19, 2018, and October 31, 2018) is incorporated fully herein by reference. And as one can plainly see from the Cigna-issued EOBs, Defendant unilaterally re-priced the subject claim (somehow) and did not deny any aspects of the claim in dispute here on coverage grounds (*e.g.*, medical necessity, experimental / investigational).[5] To this day, we really have no idea how Defendant came up with payments totaling $38,967.90 (on a billed amount of $258,200.00, *see* Ex. E, or $246,328.00 when the $11,818.00 waiver discussed in footnote 5 is taken into

---

[4] SCV's thirteen-page claim submission package to Defendant, inclusive of the HCFA, is attached as **Exhibit E**. Exhibit E is incorporated fully herein by reference.

[5] "In dispute here" because SCV hereby forgoes any effort to obtain payment for the four A1 codes identified on the October 31, 2018, EOB (*see* Ex. F) totaling $11,818.00. This waiver is done in the spirit of compromise where none should be required (because it was improper for Defendant to deny the four A1 line-items) in order to legally streamline this action (not turn this matter into a "right of payment" dispute).

consideration) because at every turn (SCV's requests and undersigned counsel's requests), Defendant has secreted how it came up with $38,967.90; *i.e.*, has never substantiated its determination that $38,967.90 was a "usual, customary, reasonable" ("UCR") amount (or the "maximum reimbursable charge," "MRC") of payment for the subject procedure. "Unilaterally" because applicable re-pricing contracts (that SCV had actually agreed to, unlike the unagreed to mystery Defendant's re-pricing contract / agreement / formula / program) were already in place (*see* Ex. C). Again, Plaintiff presently does not possess the paperwork associated with the mystery Defendant's re-pricing formula because Defendant has wrongly secreted this paperwork (the very paperwork that would evidence how Defendant came up with its unreasonably low rate of payment) from SCV in its perpetual refusal to substantiate the unjustifiably low rate of payment force-fed to SCV here. But, as with the re-pricing contracts (Ex. C) that SCV maintains should apply here in determining the proper rate of payment, the mystery Defendant's re-pricing contract / agreement / formula / program unilaterally implemented by Defendant in arriving at the disputed low claim payment amount is also separate and distinct from the insurance

policy / Plan document (Ex. A). Meaning, there is no "relation to" defensive ERISA preemption at play with a pricing dispute of this nature predicated on re-pricing contracts standing alone from Exhibit A.

In sum, as evidenced by the variety of things noted in this averment, this action has nothing to do with coverage (*i.e.*, "right of payment"), it has everything to do with the amount Defendant paid out (*i.e.*, "rate of payment") on covered HCFA codes based on a mystery Defendant's re-pricing contract / formula / program separate and distinct from the Plan insurance document (Exhibit A). In other words, the mystery Defendant's re-pricing contract / formula / program that Defendant used in re-pricing the subject claim and the re-pricing contract / agreement (Ex. C) that SCV contends should have been used do not "relate to" the Plan document (Ex. A); *i.e.*, resolution of Counts I-III will not relate to (at least not beyond a fleeting reference to, at most) the Plan document (Ex. A). Once more, "relation to" defensive ERISA preemption simply does not apply here in relation to Counts I-III. And as many Courts (several in this jurisdiction, to boot) have found, complete preemption most definitely does not apply to cases of this ilk.

9.     The fact that this dispute has nothing to do with coverage (*i.e.*, has everything to do with pricing / rate of payment) is further evidenced by Defendant's pre-surgery authorization paperwork (*see* Ex. D). The pre-surgery

authorization paperwork (Ex. D) and process is designed to put coverage (but not the eventual amount of claim payment) to rest, which, as discussed above (and as evidenced by Ex. D) is what happened – Defendant deemed the subject procedure medically necessary (which such medical necessity would relate to coverage), other than the four HCFA line-items that SCV is not pursuing here. *See* n. 5, *supra*. Exhibit D is incorporated fully herein by reference.[6]

10.    At all material times leading up to the subject medical services received from SCV, D.B. suffered from chronic lumbar pain with radiculopathy. D.B. tried alternative, conservative management treatments, which failed and surgical treatment was deemed medically necessary by both SCV (as evidenced by, for examples, the "operative note," "history and physical," and "letter of medical necessity for surgery" found in SCV's claim submission package, *see* Ex. E) and Defendant (as evidenced by, for example, the pre-authorization paperwork attached as Exhibit D, which such pre-authorization paperwork was also included in SCV's claim submission package). So, on January 23, 2018, SCV operated on D.B. to remedy the medical conditions.

11.    By facsimile dated January 22, 2018, and prior to the subject

---

[6] For what it is worth, to the point made in footnote 5 above about Defendant's eventual denial of four HCFA line-items being wrong, as one can see from Exhibit D, Cigna had approved the 20930 code that its October 31, 2018, EOB eventually denied in renege fashion. But again, so as to streamline this matter legally (not turn this matter into a "right of payment" dispute), SCV forgoes recovery of the amounts involved in the four A1 line-items that Defendant's EOB denied.

procedure, Cigna issued information to SCV approving surgical codes. As mentioned above, this paperwork is attached as Exhibit D.

12.     As mentioned above, SCV's billed charges for the subject medical services rendered to D.B. totaled $258,200.00 (*see* Ex. E) or $246,328.00 when the $11,818.00 waiver discussed in footnote 5 is taken into consideration, and a claim package was promptly submitted to Cigna relating to same *via* certified mail (certificate number 7001 2510 0003 9686 0428). The SCV cover letter to its claim submission packet (*see* Ex. E) makes specific reference to SCV's appropriate expectation that claim payment would unfold pursuant to a re-pricing contract (*see* Ex. C) that existed (not some unknown Defendant's re-pricing contract that Defendant would eventually unilaterally employ), which, again, such re-pricing contracts (even the yet discovered mystery Defendant's re-pricing formula) do not "relate to" the Plan document (Exhibit A); *i.e.*, again, resolution of Counts I-III (which hinge on the appropriate re-pricing mechanism) will require little (if any) reference to Exhibit A and certainly not a substantive reference to / "interpretation of" Exhibit A, which such substantive reference / "interpretation of" a plan document (rather than a cursory glance at a plan document, as *might* be required here) in order to resolve a rate of payment dispute is what would militate toward "relation to" defensive ERISA preemption.

13.     At all material times, Cigna was in agreement with Preferred

Medical Claim Solutions ("PMCS") (as Cigna's affiliate and / or subcontractor and / or vendor and / or agent and / or the like) to secure discounted rates from providers (like SCV), which were secured here in relation to SCV.[7]

14.     The PMCS allowed amount re-pricing contract (*see* Ex. C) was in full force and effect and was a legally valid and binding contract that established / developed (a) an allowed amount re-pricing rate of 80% of SCV's billed charges less patient responsibilities (*e.g.*, co-pay, deductible, co-insurance) subject to the patient's annual out-of-pocket maximum, and (b) a 100% reimbursement rate for hard costs (*e.g.*, prosthetics / implants).

15.     Notwithstanding the existing PMCS contract / agreement in place (which, again, was arranged by Cigna with PMCS as its vendor / agent), by way of EOBs dated March 19, 2018, and October 31, 2018, on Cigna letterhead, Defendant underpaid the subject claim, tendering $38,967.90 in total predicated on some mystery re-pricing formula falling outside Exhibit A implemented by Cigna and / or whatever mystery re-pricer Defendant enlisted. More specifically, Defendant failed to properly pay (proper amount, that is) the codes billed by SCV in connection with the medical procedure.

---

[7]Again, a copy of the pertinent pages of the PMCS re-pricing contract that was procured on Cigna's behalf (along with the PMCS "client" list listing Cigna) is attached hereto as Exhibit C. Again, Exhibit C is incorporated fully herein by reference. Of note, in its claim submission cover letter (*see* Ex. E), SCV made clear its expectation that the claim would be re-priced pursuant to the re-pricing contract / agreement that was brokered by Cigna with PMCS being Cigna's vendor, agent, or the like tasked with achieving discounted rates from medical providers like SCV.

16.     This matter does not present a coverage dispute (*i.e.*, "right of payment" dispute) because Defendant properly conceded coverage *via* the $38,967.90 partial claim payment (and pre-authorization paperwork, for that matter, *see* Ex. D) and did not list any medical judgment related basis (*e.g.*, medical necessity or experimental / investigational) for partial payment amongst the claim decision EOB codes (*see* Ex. F) / HCFA codes (*see* Ex. E) that SCV places at issue here (*see* n. 5, *supra*). Rather, this is a damages dispute (*i.e.*, "rate of payment" dispute) pertaining solely to the underpayment that was predicated on Defendant's aberrant claim decision-making seemingly predicated on the unsubstantiated mystery rate system employed (if a system even exists) by Defendant. And, again, whatever mystery Defendant's re-pricing contract / formula / agreement / program that was employed by Defendant is outside of Exhibit A. To be clear, and again, this dispute revolves around the re-pricing established by Defendant separate and distinct from Exhibit A and SCV's contention that the re-pricing contract separate and distinct from Exhibit A that should have been employed (*see* Ex. C). To be clear, and again, the re-pricing dispute does not involve a substantive "interpretation of" (or perhaps any "interpretation of") Exhibit A.

17.     Following the adverse Defendant's claim underpayment *via* EOBs dated March 19, 2018, and October 31, 2018, appeals and / or reconsideration processes were timely carried out by SCV, culminating with SCV's February 26,

2019, second level appeal letter and March 4, 2019, external review request.

18.    As for Defendant, the pre-suit administrative appeals process culminated with Cigna's March 8, 2019, letter, which stated, in pertinent part, as follows: "There's no need for this appeal any longer. We've made the decision to approve coverage for the services you received." Again, this is not a coverage dispute, this is a damages (*i.e.*, rate of payment) dispute. To be clear, SCV did not receive any additional payments from Defendant following the October 31, 2018, EOB and associated $9,546.00 payment from Defendant to SCV;[8] *i.e.*, it seems Defendant upheld its $38,967.90 low payment decision, but we have no idea why or how.

19.    Thereafter, undersigned counsel advised of his SCV representation and requested production of various germane documents, which Cigna purports to have provided. *See* n. 2, *supra*.

20.    Again, if one looks at the EOBs (which do not necessitate examination or "interpretation of" Exhibit A), it is plain that coverage is not at issue here – Defendant properly conceded coverage *via* initial partial payments. *See* Ex. F. And, again, as to the codes that SCV places at issue in this lawsuit, one can also look to the pre-authorization paperwork (which does not necessitate examination or "interpretation of" Exhibit A) to see that coverage is not at issue

---

[8] The March 19, 2018, EOB was coupled with a $29,421.90 payment from Defendant to SCV.

here. *See* Ex. D (as stated earlier, Exhibit D shows that the subject pre-authorization put coverage issues to rest, leaving only pricing issues). Again, the sole issue here is one of payment amount, so we turn now to germane insurance policy language in that vein just for a baseline understanding (not at all for substantive reliance).

21.     As to re-pricing, the insurance policy / Plan document (Ex. A) provides that payment of benefits is based on a MRC, as follows, in pertinent part:

> Cigna's out-of-network coinsurance payments take into account what is ordinarily paid for a service or supply in the area where it is delivered. This maximum reimbursable charge (MRC) is used as the basis for determining the plan's share of most out-of-network payments. Here's how this works:
>
> • If an out-of-network provider charges less than the MRC for services delivered to you, coinsurance will be based on that lower amount
>
> • If an out-of-network provider charges in excess of the MRC, the plan's reimbursement will be based on the MRC and you will owe your percentage of coinsurance plus whatever balance is due the provider.

Ex. A at IV-16. The insurance policy / Plan document defines MRC as follows:

> The lesser of these two charges: the provider's normal charge for a similar service **or** supply or a charge representing a percentage of what is ordinarily paid for a service or supply in a geographic area. The healthcare professional may bill the customer the difference between the healthcare professional's normal charge and the MRC as determined by the benefit plan, in addition to applicable deductibles, copays and coinsurance.

*Id.* at IV-4 (emphasis in original). The "two charges" are exactly what PMCS (Cigna's repricing vendor) determines in establishing rate of payment. This is

13

where the fleeting examination of Exhibit A would end in this case, which such fleeting examination does not rise to the level needed to establish "relation to" ERISA defensive preemption.

22.    Again, where (as here) separate and distinct re-pricing contracts / agreements have been established to determine "the provider's normal charge for a similar service" or "a charge representing a percentage of what is ordinarily paid for a service or supply in a geographic area," *see* Ex. C, such a contract / agreement controls. Defendant's own conduct evidences that much at least – Defendant implemented a mystery re-pricing contract / agreement / formula / program separate and distinct from Exhibit A, leading to the amounts of payment furnished under EOBs dated March 19, 2018, and October 31, 2018. So, Defendant should not now (through its lawyers' *ex post facto* arguments) be heard to say that "relation to" defensive preemption applies to this dispute – at minimum, what is good for the goose is good for the gander; *i.e.*, at minimum, waiver and / or estoppel are at play.

23.    Defendant's implementation of its mystery re-pricing contract / agreement / formula / program is untenable because SCV did not agree to same and, more importantly, the parties had previously agreed to a rate of payment contract (*see* Ex. C).

24.    Once more, to date, it is unclear how Defendant ended up re-pricing the subject claim and / or why Defendant deviated from (or reneged on)

the re-pricing contracts that had been established between the parties (*see* Ex. C). But what is clear is that this dispute revolves around re-pricing contracts separate and distinct from the Plan document (Ex. A) and is accordingly not defensively preempted.

25.     Defendant wronged SCV in many ways, most notably by way of the significant underpayment. Defendant should have employed the PMCS re-pricing contract (Ex. C) already in place (*i.e.*, already agreed to between the parties) to assess a proper re-priced amount; but, instead, Defendant implemented a mystery re-pricing system (not agreed to by SCV) separate and distinct from Exhibit A to arrive at the low rate of payment at issue.

26.     Under the PMCS re-pricing analysis (which, again, was a re-pricing contract / agreement established by Cigna that SCV actually agreed to, and unlike the Defendant's mystery re-pricing contract / agreement / formula / program that Defendant unilaterally employed here without SCV's agreement), Defendant should have used an 80% rate to calculate the allowed amount equaling $211,156.00 (which such amount is 80% of all non-implant HCFA line-items and 100% of all implant HCFA line-items).[9] This is the amount that the assumed patient responsibilities (capped at an annual out-of-pocket maximum) should have been deducted from. The $211,156.00 less Defendant's

---

[9] This PMCS-oriented re-price uses $246,382.00 as the billed amount; *i.e.*, takes into consideration the line-items that SCV foregoes recovery on. *See* n. 5, *supra*.

prior payment (which such prior payment presumably already took patient responsibilities subject to the annual out-of-pocket maximum into consideration) leaves an outstanding balance of $172,188.10 due and owing to SCV. This amount is exclusive of attorneys' fees, costs, interest, and / or extra-contractual exposure.

27.     SCV has suffered significant financial harm no matter how one slices this situation. The financial harm by way of owed medical services monies is in excess of $75,000.00, not including interest of attorneys' fees, costs, or interest, if, for examples, the negotiated, agreed to 80% / 100% rate prescribed by Cigna's third-party re-pricing vendor (PMCS) is honored / enforced as it should be, or even if rates prescribed by publicly available databases assessing the charges of providers of like kind within like geographies, like Agency for Health Care Administration ("AHCA"),[10] were utilized in the re-pricing assessment.

28.     SCV exhausted the pre-suit appeal process in an effort to accomplish Defendant's doing the right thing (*i.e.*, properly compensating SCV) sans litigation, to no avail. Hence, this lawsuit as SCV's regrettable last resort.

**COUNT I – BREACH OF CONTRACT (CLAIM UNDERPAYMENT)**

SCV re-alleges Paragraphs 1 through 28 as if fully set forth herein, and

---

[10]  *See, e.g.*, http://www.floridahealthfinder.gov/LandingPages/HospitalASC.aspx   and http://www.floridahealthfinder.gov/CompareCare/SelectChoice.aspx.

further alleges as follows.

29.     At all material times to this action and in exchange for a valuable premium, D.B.'s health was insured under the Plan document (Exhibit A).

30.     The subject medical services were covered under the Plan document, as evidenced by, for examples, (a) Defendant's partial payment relating to same, (b) the Cigna-issued EOBs (Ex. F), (c) pre-authorization paperwork (Ex. D) approving the subject HCFA codes (Ex. E), and (d) *et cetera*. A fuller discussion as to why coverage is not at issue in this pure pricing dispute can be found in the above common allegations, namely Paragraphs 8-9.

31.     Defendant erred in deciding to not fully compensate SCV by only tendering a $38,967.90 underpayment in relation to $246,382.00 in billed charges (*see* n. 10, *supra*) predicated on Defendant's mystery re-pricing contract / agreement / formula / program separate and distinct from Exhibit A. As to all codes set forth on the HCFA (Ex. E), Defendant should have honored the re-pricing contract (PMCS) included in Exhibit C that the parties had actually already agreed to. Defendant's payment amount comes nowhere close to the re-pricing formulas prescribed by PMCS (80% HCFA non-implant codes / 100% HCFA implant codes). *See* ¶ 26, *supra*. Defendant's payment amount is accordingly in breach of the subject re-pricing contracts (Ex. C).[11]

---

[11] And, again, at minimum, Defendant's payment amount also does not come close to typical rates within the subject geography. Again, that kind of information can be easily found in the

32.     Defendant's $38,967.90 underpayment does not constitute a usual, customary, reasonable re-priced / allowed amount no matter how one views the situation. First, for example, third-party repricing vendor who Cigna contracts with (PMCS) have established SCV's UCR (or MRC) based re-priced / allowed amount at 80% of billed charges in relation to non-implant HCFA line-items and 100% in relation to implant HCFA line-items. Second, as another example, unbiased public databases (*e.g.*, AHCA) assessing the rates of providers of like kind within like Florida geographies make clear that Defendant's unsubstantiated low payment does not find support amidst UCR rates relating to providers of like kind within like Florida geographies.

33.     Defendant, among other things, had a duty to properly investigate the subject medical services, adjust / investigate the subject SCV claim relating to such services, and fully compensate SCV in relation to same. Defendant failed SCV in these regards (most notably with respect to its failure to pay the monies due and owing under the subject re-pricing contracts), which breached the subject re-pricing contracts / agreements and / or violated Florida law.

34.     As a direct, foreseeable, and proximate result of Defendant's breach of its obligations under the re-pricing contracts, SCV has suffered and continues to suffer damages.

---

public domain through very reputable sources, *see* n. 11, *supra*.

35.     SCV has no other adequate remedy other than this lawsuit to address the injuries it has suffered as a result of Defendant's underpayment of the monies owed to it in relation to the subject D.B. medical services.

36.     As a further result of Defendant's refusal to fully compensate SCV, SCV has been forced to retain legal counsel to represent it in this matter and is accordingly entitled to recover its reasonable attorneys' fees and costs pursuant to Section 627.428 of the Florida Statutes or pursuant to a prospective offer of judgment shifting or as otherwise awardable.

WHEREFORE, Plaintiff, Surgery Center of Viera, LLC, requests the entry of judgment against Defendant, Cigna Health and Life Insurance Company, for liability and for damages including, but not limited to, (a) past-due contractual monies owed in relation to the subject medical services and all associated awardable accrued interest, (b) attorneys' fees pursuant to Section 627.428 of the Florida Statutes or pursuant to a prospective offer of judgment shifting or as otherwise awardable, (c) costs incurred bringing this action, and (d) for such other relief as this Court deems equitable, just and proper.

**COUNT II – UNJUST ENRICHMENT**

SCV re-alleges Paragraphs 1 through 28 as if fully set forth herein, and further alleges as follows.

37.     SCV conferred a direct benefit on Defendant by providing the insured / member (D.B.) with medical services to which the insured was

entitled under the insurance policy (covered) as evidenced by Defendant's partial payment. Examples of "conferral of benefit" would include the following, for examples, which are posed as questions: (a) What about the Plan and / or Harris Corporation receiving the benefit when their policyholder / employee received care and treatment offering the subject insurance policy as the primary method of payment? (b) What about the good health of D.B. conferred on Defendant? Was it not of benefit to Defendant that SCV minimized (if not entirely eliminated, actually) D.B.'s future medical expense (and insurance claims to Defendant) relating to the subject conditions such as prolonged alternative treatments or a return for more (and perhaps more complex) surgery due to complications arising out of some other inferior treatment regimen?

38.     Defendant voluntarily accepted and received the benefit conferred by SCV, with the knowledge that SCV expected to be paid the reasonable value of its services; *i.e.*, SCV's usual, customary, reasonable charges as prescribed by a reasonable, negotiated re-pricing vendor (PMCS) or, for that matter, as prescribed by Florida's publicly available AHCA database assessing rates of various medical providers of like kind within like geography. Again, as to Defendant's knowledge, there are several things supportive of same in the above common allegations; *e.g.*, the pre-authorization process, SCV's claim submission package cover letter and HCFA, the parties past dealings with each

other, and *et cetera*.

39.     Defendant voluntarily accepted and received the benefit conferred by SCV, with the knowledge (through course of past dealings with SCV that included claim submission cover letters such as that attached as Exhibit E indicating re-pricing contract expectations, or otherwise) that SCV expected to be paid the reasonable value of its services; *i.e.*, SCV's UCR charges as prescribed by reasonable re-pricing vendors (*e.g.*, PMCS) or, for that matter, as prescribed in the Florida's publicly available AHCA database assessing rates of various medical providers of like kind within like geography.

40.     Defendant has not paid the value of the benefit conferred by SCV in that Defendant has significantly underpaid SCV's claim for monies owed in relation to the medical services provided to D.B.

41.     Defendant's underpayment results in a windfall for Defendant in that (a) Defendant collects premiums in return for agreeing to properly compensate providers, like SCV, who render covered medical services, and / or (b) Defendant enjoys an unearned profit in relation to the insurance benefits themselves, in relation to interest that has accrued on the wrongly withheld benefits, in relation to investment returns enjoyed through the monies wrongly withheld from SCV, in relation to level-funded plan profits enjoyed through the wrongly withheld monies, and / or *et cetera*.

42.     It is unjust under the circumstances for Defendant to underpay

SCV's claim.

43.    SCV has no other adequate remedy other than this lawsuit to address the injuries it has suffered as a result of Defendant's underpayment of the monies owed to it in relation to the subject medical services.

44.    As a further result of Defendant's refusal to fully compensate SCV, SCV has been forced to retain legal counsel to represent it in this matter and is accordingly entitled to recover its reasonable attorneys' fees and costs pursuant to Section 627.428 of the Florida Statutes or pursuant to a prospective offer of judgment shifting or as otherwise awardable.

WHEREFORE, Plaintiff, Surgery Center of Viera, LLC, requests the entry of judgment against Defendant, Cigna Health and Life Insurance Company, for liability and for damages including, but not limited to, (a) past-due monies owed for the subject medical services and all associated awardable accrued interest, (b) attorneys' fees pursuant to Section 627.428 of the Florida Statutes or pursuant to a prospective offer of judgment shifting or as otherwise awardable., (c) costs incurred bringing this action, and (d) for such other relief as this Court deems equitable, just and proper.

## COUNT III – *QUANTUM MERUIT*

SCV re-alleges Paragraphs 1 through 28 as if fully set forth herein, and further alleges as follows.

45.    SCV conferred a direct benefit on Defendant by providing the insured / member (D.B.) with medical services to which the insured was entitled under the insurance policy (covered) as evidenced by Defendant's partial payment. Examples of "conferral of benefit" (in the form of questions) are discussed in Paragraph 37, *supra*, and incorporated into this count by reference.

46.    SCV billed Defendant its UCR charges for the services as prescribed by a reasonable re-pricing vendor (PMCS) or, for that matter, as prescribed by Florida's publicly available AHCA database assessing rates of various medical providers of like kind within like geography. The billed charges represent the fair market value of the services rendered.

47.    Defendant received the bill from SCV but underpaid SCV for the services.

48.    An implied contract was doubtless established through Defendant's knowledge that services were being rendered and both sides intended for compensation to be paid, with the parties possessing the compensation intention through the course of their past dealings (such as through claim submission letters like Exhibit E routinely furnished to Cigna indicating SCV's expectation to be paid pursuant to the subject re-pricing contracts) or otherwise.

49.     In order for the implied contract to have been formed, Defendant did not have to be the recipient of the services or request the services.

50.     SCV is entitled to reasonable compensation for the services (*i.e.*, *quantum meruit*), which is by no means accomplished by Defendant's unsubstantiated low payment but is reflected in reasonable sources such as third-party re-pricing vendors' (*e.g.*, PMCS) or Florida's publicly available AHCA databases of assessments of SCV's rates. And determination of the proper amount of compensation is a question of fact reserved for a jury.

51.     The circumstances are such that it would be inequitable for Defendant to retain the benefit of the subject medical services without paying SCV the proper value for same.

52.     SCV has no other adequate remedy other than this lawsuit to address the injuries it has suffered as a result of Defendant's underpayment of the monies owed to it in relation to the subject medical services.

53.     As a further result of Defendant's refusal to fully compensate SCV, SCV has been forced to retain legal counsel to represent it in this matter and is accordingly entitled to recover its reasonable attorneys' fees and costs pursuant to Section 627.428 of the Florida Statutes or pursuant to a prospective offer of judgment shifting or as otherwise awardable.

WHEREFORE, Plaintiff, Surgery Center of Viera, LLC, requests the entry of judgment against Defendant, Cigna Health and Life Insurance Company, for

liability and for damages including, but not limited to, (a) past-due monies owed for the subject medical services and all associated awardable accrued interest, (b) attorneys' fees pursuant to Section 627.428 of the Florida Statutes or pursuant to a prospective offer of judgment shifting or as otherwise awardable., (c) costs incurred bringing this action, and (d) for such other relief as this Court deems equitable, just and proper.

## JURY DEMAND

54.    Plaintiff, Surgery Center of Viera, LLC, demands a trial by jury on all issues so triable as a matter of right.

Dated:  February 23 2022.

Respectfully Submitted,

**CALLAGY LAW, P.C.**
1900 N.W. Corporate Blvd., Ste 310W
Boca Raton, Florida  33431
(561) 405-7966 (o); (201) 549-8753 (f)

/s/ Jeffrey L. Greyber
**Jeffrey L. Greyber, Esq.**
Fla. Bar No. 41103
jgreyber@callagylaw.com
hcasebolt@callagylaw.com
*Attorney for Plaintiff*