UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SURGERY CENTER OF VIERA,
LLC,

   Plaintiff,

v.              Case No. 6:22-cv-393-JA-LHP

CIGNA HEALTH AND LIFE
INSURANCE COMPANY,

   Defendant.

## ORDER

This cause comes before the Court on Defendant Cigna Health and Life Insurance Company's (Cigna) Motion to Dismiss (Doc. 15) and Plaintiff Surgery Center of Viera, LLC's (SCV) Response (Doc. 21) thereto. For the reasons set forth below, the Motion will be granted.

### I. BACKGROUND[1]

This case involves a billing dispute between SCV, a medical provider based in Viera, Florida, and Cigna, the administrator of an employer-funded health plan. (Doc. 1 ¶ 2). On January 23, 2018, SCV performed a pre-approved surgery on D.B., a patient insured under the plan. (*Id.* ¶ 10). Following the

---

[1] Factual allegations in the Complaint are taken as true for the purpose of deciding the Motion to Dismiss. *See, e.g., Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

procedure, SCV submitted a claim package to Cigna for $258,200. (*Id.* ¶ 12). Although Cigna acknowledged that most of the billing codes submitted with the claim were covered under the plan, it issued only a partial payment totaling $38,967.90. (*Id.* ¶ 15). According to SCV, this underpayment violated a re-pricing agreement secured by Cigna's agent, Preferred Medical Claim Solutions (PMCS), which obligated Cigna to pay "80% of SCV's billed charges less patient responsibilities (e.g. co-pay, deductible, co-insurance) subject to the patient's annual out-of-pocket maximum." (*Id.* ¶ 14). SCV claims that, under that re-pricing agreement, Cigna owed a minimum of $211,156.[2]

When its appeals to Cigna proved unsuccessful, (*id.* ¶ 17), SCV brought this suit, alleging three counts: breach of contract (Count I), unjust enrichment (Count II), and quantum meruit (Count III). Cigna now urges this Court to dismiss the Complaint.

## II.  LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(6), parties may move to dismiss claims brought against them by asserting that the relevant pleading "fail[s] to state a claim upon which relief can be granted." "Generally, federal civil complaints need only state 'a short and plain statement of the claim

---

[2] SCV's Complaint "forgoes any effort to obtain payment" for four billing codes that Cigna determined were not covered under the plan, totaling $11,818. (Doc. 1 ¶ 8.b. n.5). Accordingly, SCV deducted this amount from its initial claim when calculating how much it was due under the re-pricing agreement. (Doc. 1 ¶ 26 n.9).

2

showing that the pleader is entitled to relief." *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1308 (11th Cir. 2002) (quoting Fed. R. Civ. P. 8(a)). "[D]etailed factual allegations" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

### III.   DISCUSSION

Cigna offers three reasons why the Complaint should be dismissed. First, it argues that the Complaint constitutes an impermissible "shotgun pleading" in violation of Federal Rule of Civil Procedure 8(a)(2). (Doc. 15 at 2). Second, it suggests that SCV's claims are preempted by ERISA. (*Id.*). Finally, it insists that even if not preempted, each count fails to state a claim for relief as pleaded. (*Id.* at 4). The Court discusses these arguments in turn. But, because the Court agrees with Cigna that SCV's Complaint constitutes an impermissible shotgun pleading and that SCV's claims are defensively preempted, it does not address Cigna's remaining 12(b)(6) arguments.

**A. Shotgun Pleading**

Federal Rule of Civil Procedure 8 requires a complaint to include "a short

and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In addition, "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). As acknowledged by the Eleventh Circuit:

> The purpose of [this rule] is self-evident, to require the pleader to present his claims discretely and succinctly, so that[] his adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not.

*Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015) (quoting *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1544 n.14 (11th Cir. 1985) (Tjoflat, J., dissenting)). A complaint that fails to satisfy this purpose is commonly referred to as a "shotgun pleading," an unseemly device that "'wreak[s] havoc on the judicial system' and 'divert[s] already stretched judicial resources into disputes that are not structurally prepared to use those resources efficiently." *Surgery Ctr. of Viera, LLC v. Aetna Int'l, Inc.*, Case No. 6:20-cv-109-WWB-EJK, Doc. 32 at 5 (M.D. Fla. Sept. 9, 2020) (quoting *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006)).

The Eleventh Circuit has identified at least four kinds of shotgun pleadings:

> The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type . . . is a complaint that does

4

not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type . . . is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Weiland*, 792 F.3d at 1321–23. Here, as in a similar case in this district in which SCV presented a nearly identical complaint, "[SCV] has sinned under *Weiland*, with its violation falling into the second category of shotgun pleadings." *Surgery Ctr. of Viera, LLC v. Cigna Health and Life Ins. Co.*, Case No. 6:22-cv-127-PGB-DCI, Doc. 28 at 6 (M.D. Fla. June 17, 2022).

SCV's Complaint spans fifty-four paragraphs, spread out over twenty-five pages. For the first sixteen of those pages, it is easy to mistake the document not for an initial pleading but rather a response in opposition to a motion to dismiss. Important facts, necessary both to understand the allegations in the Complaint and for a proper pleading of the claims contained therein, are nestled within a repetitive tangle of premature arguments desperately explaining why those claims—whatever they may be—are certainly, definitely, absolutely *not* preempted by ERISA.[3]

---

[3] Vexingly, the legal arguments themselves—including the purported distinction between "rate of payment" and "right of payment" claims—are without merit. *See Surgery Ctr. of Viera, LLC v. Cigna Health & Life Ins. Co.*, No. 6:20-cv-152-RBD-EJK, 2020 WL 4227428, at *2–3 (M.D. Fla. July 23, 2020); *see also infra* Section III.B.

5

The Complaint begins well enough, stating in its first paragraph that this case "arises . . . under state law for Defendant's wrongful, unsubstantiated underpayment of monies owed to SCV for medical services SCV provided to the patient / insured, D.B., on January 23, 2018." (Doc. 1 ¶ 1). In the first of many detours, however, the Complaint then immediately shifts from the facts of the case to SCV's own legal conclusions, insisting that "such causes of action have nothing to do with 'right of payment' / coverage (*i.e.*, have everything to do with 'rate of payment' / benefits unreasonably low payment amount) and which such causes of action have to do with third-party re-pricing contracts separate and distinct from the insurance policy / Plan document." (*Id.*).

This pattern is repeated throughout: facts are presented—"[t]he patient's Member I.D. number was / is 000211169 01, the assigned claim reference number was / is 9431803493452, the patient account number was / is 000200012804," (*id.* ¶ 7)—and then buried under a flurry of anticipatory legal hedges—"a copy of the insuring agreement (which is separate and distinct from the re-pricing contract / agreement at issue in this lawsuit . . . and / or whatever mystery re-pricing contract / agreement / formula / program that Defendant implemented in arriving at the rate of payment furnished here) is attached," (*id.*).[4] The result is not a "short and plain statement of the claim," Fed. R. Civ.

---

[4] Further examples abound. *See, e.g.*, Doc. 1 ¶ 8 ("[T]his action has nothing to do with coverage (*i.e.*, 'right of payment'), it has everything to do with the amount

P. 8(a)(2), but a frustrating thicket of roughhewn prose in which Cigna—and the Court—are forced to forage for morsels of relevant information.

By the time one reaches the relative clarity of the enumerated counts—sixteen pages in—they are still not out of the woods. Rather than pleading the necessary elements of unjust enrichment with a straightforward recitation of facts, for example, SCV presents a series of questions:

> Examples of 'conferral of benefit' would include the following, for examples [sic] . . . (a) What about the Plan and / or Harris Corporation receiving the benefit when their policyholder / employee received care and treatment offering the subject insurance policy as the primary method of payment? (b) What about the good health of D.B. conferred on Defendant? Was it not of benefit to Defendant that

---

Defendant paid out (*i.e.*, 'rate of payment') on covered HCFA codes based on a mystery Defendant's re-pricing contract / formula / program separate and distinct from the Plan insurance document (Exhibit A). In other words, the mystery Defendant's re-pricing contract / formula / program that Defendant used in re-pricing the subject claim and the re-pricing contract / agreement (Ex. C) that SCV contends should have been used do not "relate to" the Plan document (Ex. A); *i.e.*, resolution of Counts I-III will not relate to (at least not beyond a fleeting reference to, at most) the Plan document (Ex. A). Once more, "relation to" defensive ERISA preemption simply does not apply here in relation to Counts I-III."); *id.* ¶ 9 ("The fact that this dispute has nothing to do with coverage (*i.e.*, has everything to do with pricing / rate of payment) is further evidenced by Defendant's pre-surgery authorization paperwork."); *id.* ¶ 12 ("The SCV cover letter to its claim submission packet (*see* Ex. E) makes specific reference to SCV's appropriate expectation that claim payment would unfold pursuant to a repricing contract (*see* Ex. C) that existed (not some unknown Defendant's repricing contract that Defendant would eventually unilaterally employ), which, again, such re-pricing contracts (even the yet discovered mystery Defendant's re-pricing formula) do not 'relate to' the Plan document (Exhibit A); *i.e.*, again, resolution of Counts I-III (which hinge on the appropriate re-pricing mechanism) will require little (if any) reference to Exhibit A and certainly not a substantive reference to / 'interpretation of' Exhibit A, which such substantive reference / 'interpretation of' a plan document (rather than a cursory glance at a plan document, as might be required here) in order to resolve a rate of payment dispute is what would militate toward 'relation to' defensive ERISA preemption.").

> SCV minimized (if not entirely eliminated, actually) D.B.'s future medical expense (and insurance claims to Defendant) relating to the subject conditions such as prolonged alternative treatments or a return for more (and perhaps more complex) surgery due to complications arising out of some other inferior treatment regimen?

(Doc. 1 ¶ 37).

Creative as this approach may be, it does little to streamline the reader's understanding of the alleged facts. *See Surgery Ctr. of Viera*, Case No. 6:22-cv-127-PGB-DCI, Doc. 28 at 28 n.8 (citing a similar paragraph in a different SCV complaint as "yet another example of why the Complaint should be dismissed without prejudice for failing to provide Defendant adequate notice of the nature of the factual allegations against it"). Indeed, it alleges no facts at all, straying instead from the clear path proscribed by Rule 8 to publicly ruminate on the kinds of questions that might inform SCV's arguments in opposition to an anticipated motion to dismiss.

While the general thrust of SCV's allegations is decipherable with enough effort, the burden imposed on Cigna and this Court by the content, structure, and style of the Complaint is simply too great to satisfy the purposes of Rule 8. This Court agrees with Cigna that SCV's "verbose pleading style leaves the reader strained and without a clear understanding as to what precisely is being

8

alleged." (Doc. 15 at 7).[5] The Complaint is thus due to be dismissed without prejudice as a shotgun pleading.[6]

## B. ERISA Preemption

Even if this Court were not inclined to dismiss the Complaint as a shotgun pleading, SCV's state-law claims are defensively preempted by ERISA as currently pleaded and thus fail to state a claim under Rule 12(b)(6).

Pursuant to 29 U.S.C. § 1144(a), ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." This subsection gives rise to what is commonly referred to as "defensive" or "conflict" preemption, which provides defendants with an affirmative defense to state law claims that "relate to" an ERISA-governed plan. *See Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1212 (11th Cir. 1999). The Supreme

---

[5] SCV raises two arguments for why the Complaint should not be dismissed as a shotgun pleading. First, SCV suggests that Cigna's quibbles with the Complaint should have been brought as part of a motion to strike under Rule 12(f) rather than a motion to dismiss for failure to state a claim under Rule 12(b)(6). (Doc. 21 at 18). SCV offers no citation for this point. In any event, the Eleventh Circuit has acknowledged the district court's "inherent authority to control its docket and ensure the prompt resolution of lawsuits, which in some circumstances includes the power to dismiss a complaint for failure to comply with Rule 8(a)(2)." *Weiland*, 792 F.3d at 1320. Second, SCV contends that "Cigna (and its same defense counsel) has been involved in many cases of this ilk with SCV . . . and is just giving 'shotgunning' a try this time while knowing what SCV complains of." (Doc. 21 at 19). This argument is wholly without merit. The fact that the parties have litigated similar claims in the past does nothing to alleviate SCV's responsibility to put forth a comprehensible complaint in this case.

[6] Should SCV choose to replead the Complaint, it is instructed to omit: (1) legal arguments and conclusory allegations related to an anticipated preemption defense; and (2) the use of slashes ("/") and parenthetical sentences, except where absolutely necessary.

9

Court has since clarified that the phrase "relate to" in this context is "given its broad common-sense meaning, such that a state law relates to a benefit plan in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987) (quoting *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739 (1985)).

Cigna argues that SCV's claims are defensively preempted because they "depend entirely on the existence of the underlying health plan" administered by Cigna, "which on its face is an ERISA-governed plan[] and is attached to and specifically incorporated by reference in the Complaint." (Doc. 15 at 9). SCV does not dispute that the underlying health plan is governed by ERISA. Instead, it simply ignores the clear language of 29 U.S.C. § 1144(a) and points to a different standard. Quoting an unpublished Fifth Circuit opinion, SCV contends that "[t]he question is not whether [a] plaintiff's claims *relate to* benefits under ERISA plans, but rather whether adjudication of those claims requires *an interpretation of* an ERISA plan." (Doc. 21 at 10 (emphasis added) (quoting *Kelsey-Seybold Med. Grp. PA v. Great-West Healthcare of Tex., Inc.*, 611 F. App'x 841, 842 (5th Cir. 2015)). And "because SCV's underpayment contention rests solely on a third-party re-pricing contract, not the Plan document itself," no interpretation of that plan is required. (Doc. 21 at 13).

SCV's argument is unconvincing. As in past cases, SCV continues to conflate the doctrines of defensive and complete preemption. Defensive

10

preemption, as noted above, derives from the text of 29 U.S.C. § 1144(a) and provides an affirmative defense to certain state-law claims. Complete preemption, in contrast, derives from the "comprehensive remedial scheme" created by ERISA and provides a mechanism for defendants to remove state-law claims that would otherwise remain in state court. *Butero*, 174 F.3d at 1211–12. The Eleventh Circuit has made clear that these doctrines are "separate and distinct." *Ervast v. Flexible Prods. Co.*, 346 F.3d 1007, 1012 (11th Cir. 2003).

In light of this distinction, SCV's reliance on *Kelsey-Seybold* and a related Fifth Circuit case, *Lone Star OB/GYN Assocs. v. Aetna Health, Inc.*, 579 F.3d 525 (5th Cir. 2009), is untenable—if not deceptive. For example, SCV quotes *Kelsey-Seybold* for the proposition that "the question to be answered in the *defensive preemption* analysis is whether resolution of the dispute requires 'interpretation of an ERISA plan.'" (Doc. 21 at 10 (emphasis altered)). But the Court in *Kelsey-Seybold* was explicitly referring to the test for *complete preemption*, not defensive preemption. *See* 611 F. App'x at 841 (analyzing "whether a claim is completely preempted by ERISA"); *see also Lone Star*, 579 F.3d at 529 (analyzing "complete preemption," not defensive preemption).

Were this SCV's first time down this path, the Court might have excused SCV's use of tangential authorities as a simple mistake. But at least one judge in this district has already called out SCV's "bait-and-switch" technique and

11

explained to SCV—and its lawyer—the important differences between defensive and complete preemption. *Surgery Ctr. of Viera, LLC v. Cigna Health & Life Ins. Co.*, No. 6:20-cv-152-RBD-EJK, 2020 WL 4227428, at *2–3 (M.D. Fla. July 23, 2020). That SCV may have succeeded with this argument in the past reflects not the strength of its reasoning but the dangers of its deceptive practices. *See id.* at *2 (noting that SCV's "'hide the ball' selective editing [of quoted caselaw] invites the Court into error by intentionally conflating the jurisdictional analysis necessary in removal cases with the 'related to' analysis appropriately applied to defensive preemption claims"); *see also Surgery Ctr. of Viera*, Case No. 6:22-cv-127-PGB-DCI, Doc. 28 at 12–13 n.4 (finding SCV's attempt to cite its past successes in this district—including two cases before the authoring judge—"unavailing because each case incorrectly applied the complete preemption test in the defensive preemption context").

SCV is certainly free to argue why defensive preemption *should* be available only where a claim requires the "interpretation of an ERISA plan," as is true in the complete preemption context. But, SCV having failed to do so, the Court sees no reason to stray from the Supreme Court's guidance that defensive preemption is available where a state-law claim "has a connection with or reference to [an ERISA] plan." *Pilot Life Ins. Co.*, 481 U.S. at 47 (quoting *Metro. Life Ins. Co*, 471 U.S. at 739).

12

Notwithstanding SCV's erroneous reliance on complete preemption caselaw, it is true that some state-law claims may "affect an ERISA plan in 'too tenuous, remote, or peripheral a manner to warrant a finding that the law "relates to" the plan.'" *Lordmann Enters., Inc. v. Equicor, Inc.*, 32 F.3d 1529, 1533 (11th Cir. 1994) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n.21 (1983)). And, given SCV's insistence that its "underpayment contention rests solely on a third-party re-pricing contract, not the plan document itself," (Doc. 21 at 13), it is possible that those claims fall into such a category.

As the Complaint is currently written, however, that argument falls flat. In explaining the basis for its underpayment allegations, for example, SCV points to "germane insurance policy language" providing that out-of-network providers like SCV will be paid according to a "maximum reimbursable charge," which is itself determined (in SCV's telling) by the re-pricing agreement between SCV and "Cigna's re-pricing vendor," PMCS. (Doc. 1 at 13). That re-pricing agreement, however, provides that SCV will receive "payment of [the] Adjusted Amount, *less* patient co-pay, deductible, co-insurance and non-covered amounts." (Doc. 1-3 at 2 (emphasis added)). As Cigna points out, "there is no way to determine a patient's 'co-pay, deductible, co-insurance and non-covered amounts' without consulting the ERISA plan." (Doc. 15 at 11). Since it does not appear possible to assess SCV's claims, as pleaded, without reference to the underlying ERISA health plan, those claims necessarily "relate to" that plan

and are therefore defensively preempted. *See Surgery Ctr. of Viera*, Case No. 6:22-cv-127-PGB-DCI, Doc. 28 at 15 ("If Defendant's alleged underpayment violates the Plan as it conforms with [the] 'maximum reimbursable charge' requirement via the Repricing Agreements, it is unclear to the Court how the Repricing Agreements are 'separate and distinct' or 'completely different' from the Plan, even though they are technically a 'non-ERISA' agreement." (quoting *Surgery Ctr. of Viera, LLC v. UnitedHealthcare, Inc.*, 465 F. Supp. 3d 1211, 1222 (M.D. Fla. 2020))).

## IV.   CONCLUSION

Accordingly, it is **ORDERED** as follows:

1. Cigna's Motion to Dismiss (Doc. 15) is **GRANTED**.

2. SCV's Complaint (Doc. 1) is **DISMISSED without prejudice**.

3. On or before **Monday, February 13, 2023**, SCV may file an Amended Complaint consistent with the directives of this Order, if it believes it can do so in accordance with Rule 11. Failure to timely file an Amended Complaint may result in dismissal of this entire action with prejudice without further notice.

**DONE** and **ORDERED** in Orlando, Florida, on January 24, 2023.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Parties